hPEATROSS, J.,
dissenting.
I respectfully dissent. As noted by the majority, La. .C.C. art. 9 provides as follows:
When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation . may be made in search of the intent of the legislature.
The intent of the legislature is expressly stated in the preamble to Act 528 which provides that the purpose of the act was “to provide for deposits and uses of monies in inmate’s savings accounts once the account balance reaches two hundred fifty dollars.” The legislature clearly intended to insure a balance in an inmate’s account of $250 for the payment of future obligations, such as court costs, and to provide funds to the inmate on the inmate’s release. While it is correct that the statute does not specifically state that an inmate may transfer an existing balance in his or her savings account in excess of the $250 minimum[1], it clearly allows for an inmate’s election to use amounts in excess of that minimum by depositing future compensation into the inmate’s drawing account. I believe it is clear that the phrase “future compensation” was intended to mean any amount earned by the inmate over and above the $250 minimum, not any amount earned from the date of the enactment of the statute. To hold otherwise, as does the majority, leads to absurd consequences.
[¡.Under the majority opinion, all inmates serving numbered sentences[2] who had accumulated more than $250 in their savings account when Act 528 was enacted must retain those amounts in the savings account even after the date the statute was enacted. Unless they are serving a life sentence, they may only elect to deposit amounts earned subsequent to the enactment of the statute in their drawing accounts. As Appellant points out, under such an interpretation, new inmates (inmates incarcerated after the enactment of Act 528) will be able to have all funds in excess of $250 placed in their drawing accounts, but ipmates who were incarcerated prior to the enactment of Act 528, will be required to maintain their existing savings account, even if it is in excess of $250. I do not believe that the legislature intended such a result.
Finally, interpreting “future compensation” to mean any amount earned in excess *641 of $250, regardless of whether it was earned prior to or subsequent to the enactment of Act 528, does not require that the Department of Corrections’ regulation be stricken. This construction maintains the regulation’s distinction between inmates serving life sentences and those serving numbered sentences. Inmates serving life sentences must obtain the approval of the warden to transfer funds; and, generally, all outstanding debts must be satisfied before such transfer is made. Otherwise, compensation is allocated to the two accounts on a fifty-fifty basis, such as when the savings account falls below $250. By contrast, all other inmates may also transfer to their drawing accounts amounts obtained in excess of $250, subject to the proviso that, if court costs are assessed against an inmate that will cause his or her savings account to fall below the minimum of $250, any excess compensation will be allocated at a ratio of 30 percent to the drawing | ¡¡account and 70 percent toward the satisfaction of the court-ordered costs, rather than the fifty-fifty ratio.
For these reasons, I would reverse the judgment of the trial court, render judgment in favor of Appellant and order the Department of Corrections to transfer the funds requested from Appellant’s savings account to his drawing account.

. It is the subsequent regulation, however, that creates the distinction between transferring funds in excess of $250, which option is available only to those inmates serving life sentences, and th.e election of having future compensation deposited into the inmate's drawing account rather than his or her savings account, which option is available to "other inmates,” or those serving numbered sentences. In their brief, Appellees strenuously argue that the statute does not provide for the transfer of existing balances at all. I note that, if the regulation is interpreted to prohibit the transferring'of balances, then the Department of Safety and Corrections’ promulgation . of regulation No. B-09-003 (6)(A)(3) may well have exceeded its statutory authority by authorizing the transferring of excess funds by inmates serving life sentences.

. The term “numbered sentence” refers to a term of incarceration imposed for a specified number of years as opposed to a life sentence. In this case, Appellant was sentenced to a term of 99 years, not a life sentence.